**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA,**
**Norfolk Division**

CRAWL SPACE DOOR SYSTEM, INC.

       Plaintiff,

v.                                                Civil Action No.: 2:19cv320

SMARTVENT PRODUCTS, INC.,

       Serve:
       Sharon Haas
       Registered Agent
       430 Andbro Drive, Unit 1
       Pitman, NJ 08071

RISK REDUCTION PLUS GROUP, INC.

       Serve:
       Thomas S. Little, Jr.
       Registered Agent
       430 Andbro Drive, Unit 1
       Pitman, NJ 08071

and

SYLRO SALES CORP.
       trading as
SUNVENT INDUSTRIES

       Serve:
       Lori Joseph Malitsky
       Registered Agent
       One Industrial Drive #26
       Pelham, NH 03076

       Defendants.

## COMPLAINT

Comes now Plaintiff Crawl Space Door System, Inc. ("Crawl Space") by counsel, and for its Complaint against defendants Smartvent Products, Inc. ("Smartvent"), Risk Reduction Plus Group, Inc. ("Risk Reduction"), and Sylro Sales Corp. d/b/a Sunvent Industries ("Sunvent") states as follows.

### NATURE OF THE ACTION

1.      This is a civil action for violations of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq*.

2.      These claims arise out of an anti-competitive scheme designed by defendant Smartvent and perpetrated in combination with defendants Risk Reduction and Sunvent in order to drive all competition out of the marketplace in which Smartvent competes.

### PARTIES

3.   Plaintiff Crawl Space Door System, Inc. ("Crawl Space") is a Virginia corporation with its principle office location at 5741 Bayside Road, #105, Virginia Beach, Va. 23455.

4.   Defendant Smartvent Products, Inc. ("Smartvent") is a Florida corporation that is a registered foreign corporation in New Jersey, with its principle office location at 430 Andbro Drive, Unit 1, Pitman, New Jersey 08071.

5.   Defendant Risk Reduction Plus Group, Inc., ("Risk Reduction") is a New Jersey corporation with its principle office located at 430 Andbro Drive, Unit 1, Pitman, New Jersey 08071.

6.   Defendant Sylro Sales Corp. d/b/a Sunvent Industries ("Sunvent") is a New Hampshire corporation with its principle office located at 1 Industrial Drive #26, Pelham, New Hampshire 03076.

## JURISDICTION AND VENUE

7.   This Court has subject matter jurisdiction under 28 USC § 1331 and 28 USC § 1337 as the claims herein arise under Federal Statute, particularly the Sherman Antitrust Act, 15 USC § 1 *et seq*. This Court also has subject matter jurisdiction under 28 USC § 1332 as there is complete diversity among the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

8.   Venue is proper in this district under 15 USC § 22 as all defendants transact business in this venue.

## BACKGROUND

9.   Flood vents are devices intended to be installed in crawl spaces and the like.  Flood vents allow flood water to pass through foundation and other building walls, thereby relieving water pressure against a structure to avoid structural damage during flood events.

10. The Federal Emergency Management Agency ("FEMA") promulgates guidelines for flood vents, allowing flood vent manufacturers to claim that their products are "FEMA compliant" so long as their flood vents meet the FEMA guidelines.

11. The National Flood Insurance Program ("NFIP") promulgates guidelines for flood vents, allowing flood vent manufacturers to claim that their products are "NFIP compliant" so long as their flood vents meet the NFIP guidelines.

12. The marketplace for flood vents, especially flood vents that meet FEMA and NFIP requirements, was once robust and competitive with at least seven different domestic companies selling flood vents of varying designs and cost that meet those guidelines.

13. Of those competitors selling flood vents, Smartvent has specifically targeted six companies selling flood vents in direct competition with Smartvent that meet those guidelines and are known as "engineered" flood vents that are certified on a state-by-state basis.[1]

14. Through the use of illegal, anti-competitive tactics, defendant Smartvent has driven all but two of those "engineered" flood vent competitors out of the marketplace entirely.  Of the two remaining competitors with engineered flood vents, Smartvent schemed with one (defendant Sunvent) to stop selling flood vents and to force the only remaining direct competitor, plaintiff Crawl Space Doors, out of the marketplace as well.

15. As part of its plan to illegally monopolize the marketplace, Smartvent is currently pursuing claims against Crawl Space in the U.S. District Court of New Jersey, Case No. 1:13cv05691 (the "New Jersey Case").

16. If Smartvent succeeds in its scheme, it will be the only provider of flood vents to all customers in the U.S. other than a single other company with ICC certification, and if the history of Smartvent's tactics is any guide, that company is already or soon will be targeted by Smartvent.

**FACTS**

17. Smartvent sells flood vents in the same market as Crawl Space, and is a direct competitor.

18. Currently, primarily due to its anti-competitive actions, Smartvent sells an estimated ten million dollars ($10,000,000.00) in flood vents on a yearly basis.

---

[1] Flood vents can also acquire an ICC-ES (International Code Council Evaluation Service) certification, which provides certification of FEMA and NFIP compliance as well as building code compliance, and does not require certification in individual states.  Other than one other company, Flood Flaps, Smartvent is the only company selling ICC-ES flood vents.

19. Smartvent's scheme, in conjunction with the other defendants, is predicated on a plan to drive competitors out of the marketplace through:

a. Falsely claiming to consumers and the general public that competitor's vents are illegal to use.

b. Using its greater cash flow to institute numerous sham litigation cases in order to force competitors to leave the marketplace.

c. Forcing competitors, in the face of untenable litigation costs, to assign over to Smartvent any rights a competitor may have in vent design and construction.

d. Entering into agreements with competitors to have the competitor withdraw competing products, and requiring the competitor to pay sums of money in order for Smartvent to continue litigation against other competitors in return for a share of potential damages recovered in litigation and/or settlement.

e. Causing false reports to be made to state licensing agencies claiming that engineers hired by competitors to certify flood vents have acted improperly and/or illegally.

f. Tying products together by creating and using Risk Reduction, an insurance company that is wholly owned by Smartvent, to advise customers seeking flood insurance that the products of competitors are "illegal" and/or not FEMA compliant so as to coerce customers to not only purchase insurance through Risk Reduction but to exclusively purchase Smartvent products.

g. Using a patent obtained by fraud to attempt to force competitors out of the marketplace.

20. To date, through this illegal scheme, defendants have forced five sellers of engineered flood vents out of the marketplace so that only Crawl Space remains as a seller of engineered flood vents in the market, and Smartvent is actively litigating against the Crawl Space in order to force Crawl Space out of the marketplace.

21. The false reports to state licensing agencies related to engineers hired by competitors were not directed towards achieving a political result or affecting public policy, but were intended solely to use any means possible to attack competitors and force them out of the marketplace.

22. To date, Smartvent has filed suit against five (5) direct competitors, and threatened suit against a sixth (Sunvent) in a pattern of threatening and/or filing baseless, repetitive claims as part of its strategy to eliminate competitors from the marketplace.

23. In addition, Smartvent and Sunvent schemed to remove Sunvent flood vents from the marketplace, and use combined resources to pursue Crawl Space and remove Crawl Space as the last competition against Smartvent in the flood vent marketplace.

24. Smartvent's strategy is structured so that it targets one or two competitors at a time, but uses the same basic tactics against each one, and is premised on the idea that it can afford to outspend a competitor facing a federal lawsuit, forcing the competitor to accede to its demands.

25. Smartvent's sham litigation scheme is similar in all the cases.  Smartvent brings claims for either patent infringement, unfair competition, or both, by and through the same law firm of A.J. DiMarino, P.C.

26. In each of the lawsuits filed by Smartvent against competitors (with the exception of the suit versus Crawl Space) there is the same outcome:  no case reached any full final decision on the merits and the case resolved with the defendant forced out of the marketplace and the defendant's business shuttered.

27. Only Smartvent remains as competition in the marketplace for engineered flood vents.

### SMARTVENT V. USA FLOODAIR VENTS, LTD.

28. Smartvent filed suit in 2010 against USA Floodair Vents, Ltd. claiming that USA Floodair Vents was, among other things, falsely claiming its flood vents were FEMA and NFIP compliant; Smartvent, Inc. v. USA Floodair Vents, Ltd., in the United States District Court for the District of New Jersey, case no. 1:10cv00168.  Smartvent also included claims for patent infringement.

29. The suit was stayed in 2012 pending the Ex Parte Reexamination of the patent in suit and an Ex Parte Reexamination Certificate was issued on February 12, 2014.

30. That case finally resolved in 2018 with a settlement and Stipulation of Dismissal with Prejudice entered on June 29, 2018.

31. USA Floodair Vents, Ltd. is now out of business as a result of Smartvent's actions.

### SMARTVENT V. VINYLAST, INC.

32. Smartvent filed a bare-bones suit in December of 2011 against Vinylast, Inc. claiming that Vinylast was infringing on Smartvent's US Patent No. 5,944,445 (the same patent at issue in its suit against USA Floodair Vents). Smartvent, Inc. v. Vinylast, Inc., in the United States District Court for the District of New Jersey, case no. 1:11cv07071.

33. By September of 2012, Vinylast was forced to settle the matter with Smartvent, and Vinylast, Inc. is now out of business as a result of Smartvent's actions.

## SMARTVENT V. AAA LOUVERS, INC.

34. Smartvent filed suit in June of 2013 against AAA Louvers, Inc., claiming that AAA Louvers was infringing three of Smartvent's patents and also unfairly competing in the marketplace by not complying with the NFIP guidelines.  Smartvent, Inc. v. AAA Louvers, Inc., in the United States District Court for the District of New Jersey, case no. 1:13cv03643.

35. The case was stayed pending mediation in August of 2014, and by early 2015 the case was settled and dismissed.

36. AAA Louvers and Millworks is now out of the flood vent marketplace as a result of Smartvent's actions.

## SMARTVENT V. TED SHOOK, d/b/a AMERICAN FLOODVENT

37. Smartvent filed suit in March of 2017 against Ted Shook, claiming that Shook was infringing Smartvent's US Patent No. 5,944,445 and also unfairly competing in the marketplace by not complying with the NFIP guidelines.  Smartvent, Inc. v. Shook, in the United States District Court for the District of New Jersey, case no. 1:17cv01579.

38. By September of 2017, Shook was forced to accede to Smartvent's demands, including being forced to assign rights in a patent that was not at issue in the lawsuit.

39. Shook and American Floodvent is now out of business as a result of Smartvent's actions.

## SMARTVENT V. FLOOD SOLUTIONS (D/B/A SUNVENT)

40. At least as early as 2013 Smartvent and Sunvent began having conversations about taking action against Crawl Space to remove Crawl Space from the marketplace and Sunvent had already begun a campaign of filing complaints against the engineers certifying Crawl Space flood vents.

41. At the same time, Smartvent was targeting Sunvent, including providing Sunvent with a draft complaint that it would file if Sunvent did not meet its demands.

42. By and through its counsel, Smartvent schemed with Sunvent against Crawl Space to provide Smartvent with a marketplace devoid of any competition from sellers of engineered flood vents.

43. In furtherance of that scheme, Sunvent agreed to remove the term "FEMA approved" from its marketing materials.

44. Sunvent also agreed to not seek any future patent protection for any of its flood vents.

45. Smartvent and Sunvent also agreed that Sunvent would pay a sum of money to Smartvent and that Smartvent would use the money to pursue claims against Crawl Space.

46. Sunvent, as a part of its scheme with Smartvent, no longer sells engineered flood vents.

## SMARTVENT V. CRAWL SPACE DOORS

47. Smartvent has targeted Crawl Space directly as the last competing engineered flood vent manufacturer.

48. Smartvent filed suit against Crawl Space in September of 2013, alleging among other things that Crawl Space falsely claimed that its flood vents were FEMA and NFIP compliant. Smartvent, Inc. v. Crawl Space Doors, in the United States District Court for the District of New Jersey, case no. 1:13cv05691.

49. During the course of the litigation, the court entered an order finding that Crawl Space's flood vents are in fact FEMA and NFIP compliant, that Smartvent "readily admit[ted]" the same in its pleadings, and dismissing those claims with prejudice.  Smartvent v. Crawl Space Doors, Case No. 1:13cv05691, DKT. 94 (D.N.J. August 16, 2016).

50. Smartvent continues to press its remaining claims, and trial is currently set for September of 2019.

51. Despite knowing that Crawl Space flood vents are FEMA and NFIP compliant, and despite the ruling of the court in 2016, Smartvent has been and continues to attack Crawl Space in the marketplace, including telling third parties, clients of Crawl Space, and regulators that Crawl Space flood vents are not FEMA or NFIP compliant, as further described below.

52. Crawl Space has been and continues to be directly harmed by Smartvent's actions.

53. As a result of Smartvent's litigation and marketplace interference, as well as the threat of additional litigation brought by Smartvent, Crawl Space has been forced to avoid bringing new flood vent designs to the market.

## RISK REDUCTION PLUS GROUP

54. Risk Reduction Plus Group ("Risk Reduction") was formed in 2014 in the state of New Jersey.

55. Risk Reduction is a private insurance company that provides, among other services, flood insurance.  The use of FEMA-compliant flood vents allows for reduced premiums under the National Flood Insurance Program (NFIP).

56. Risk Reduction is a wholly-owned subsidiary of Smartvent, is operated in conjunction with Smartvent and shares the same physical location:  430 Andbro Drive, Unit 1, Pitman NJ, 08071.

57. Risk Reduction's officers are the same individuals as the officers of Smartvent: CEO Winfield S. Anderson (a/k/a W. Scott Anderson), President Michael Graham, Secretary Andrew B. Koniecki, Vice President Thomas S. Little.

58. Risk Reduction is operated in conjunction with of Smartvent.

59. Risk Reduction has been tying Smartvent's products to the flood insurance it sells, in part by cooperating with Smartvent to drive competitors out of the marketplace but also by coercing customers into buying Smartvent products by providing false information to clients and potential clients about CSD's flood vents.

60. Smartvent knows that Crawl Space engages engineers who certify that the Crawl Space flood vents meet or exceed the minimum net area requirements, and thus Crawl Space's flood vents are FEMA and NFIP compliant.

61. Despite that that knowledge Smartvent falsely asserted claims against Crawl Space alleging that Crawl Space was falsely claiming that its vents are FEMA and NFIP compliant.  As noted above, however, that Court dismissed those claims with prejudice, finding that Crawl Space's flood vents are in fact FEMA and NFIP compliant, and that Smartvent "readily admit[ted]" the same in its pleadings.  Smartvent v. Crawl Space Doors, Case No. 1:13cv05691, DKT. 94 (D.N.J. August 16, 2016).

62. Despite this, Smartvent and Risk Reduction continue to intentionally provide false information to customers of Crawl Space and to potential customers of Risk Reduction.

63. For example, in a March of 2019 email exchange Andrew Farrell, an insurance broker at Risk Reduction told an individual seeking an insurance quote that the Crawl Space vents installed in her property "do not cover the amount [of square footage] their certification states it does."   After the customer contacted Crawl Space to ask for clarification, and was advised that Risk Reduction's assertions were wrong and, in fact, had been specifically found to be wrong by the Court in the New Jersey Case, Farrell responded to the customer that Crawl Space flood vents do not service the amount of enclosed space that they a certified to service (and thus are FEMA compliant), and that Crawl Space flood vents "do not meet the requirements of the National Flood Insurance Program . . . [and] those vents will not allow the structure to meet the reduced-premium requirements under the NFIP," statements which both Smartvent and Risk Reduction know to be false.

64. In May of 2019, Crawl Space was informed by Arkitektura, a Houston, Texas-based customer of Crawl Space, that Paul Abrams ("Abrams"), Director of Field Operations for Smartvent told them in an unannounced visit that they could not use Crawl Space flood vents; that using Crawl Space flood vents was a felony and that Arkitektura could be sued for using the vents, statements which Smartvent knows to be false.

65. In that same conversation with Arkitektura, Abrams bragged about Smartvent suing and putting other flood vent manufacturers out of business, and specifically that Smartvent had caused USA Flood Air Vents to go out of business in that manner.

66. As recently as June 14, 2019, Crawl Space discovered that a city inspector in Florida will no longer approve Crawl Space flood vents used by large customers in Florida because of false information given to the inspector regarding the operation of Crawl Space flood vents.

67. Because flood vents are sold throughout the United States, the actions by Smartvent, Risk Reduction, and Sunvent took place and are continuing to take place in interstate commerce.

68. The conspiracy actions by Smartvent, Risk Reduction, and Sunvent have and are resulting in unreasonable burdens on the free and uninterrupted flow of goods and services in interstate commerce.

69. In addition to the ongoing marketplace harm caused by the actions of the defendants, Crawl Space and other flood vent manufacturers have and (in the case of Crawl Space) continue to expend significant amounts of money defending against baseless claims in lawsuits intended solely as anti-competitive tools.

## COUNT  I
## VIOLATION OF 15 U.S.C. § 1 (*PER SE*)

70. Crawl Space hereby realleges and incorporates by reference the allegations of preceding paragraphs as if fully set forth herein.

71. Smartvent, Risk Reduction, and Sunvent entered into a plain agreement to divide the marketplace and remove all competition to Smartvent in the flood vent marketplace.

72. That agreement is unlawful *per se*.

73. In addition, Smartvent tying its flood vent products with the insurance offered through Risk Reduction is a *per se* violation of the Sherman Act.

74. Crawl Space and consumers of flood vents and flood insurance have been and will continue to be directly harmed by the acts of Smartvent, Risk Reduction, and Sunvent.

## COUNT II
## VIOLATION OF 15 U.S.C. § 1 (RULE OF REASON)

75. Crawl Space hereby realleges and incorporates by reference the allegations of preceding paragraphs as if fully set forth herein.

76. Smartvent, Risk Reduction, and Sunvent entered into a plain agreement to divide the marketplace and remove all competition to Smartvent in the flood vent marketplace.

77. Rather than competing on the merits, Smartvent has used threats of suit and actual lawsuits as bludgeons to force competitors out of the marketplace, litigating solely for the purpose of creating a monopoly in the marketplace.  This pattern of baseless and repetitive claims are an abuse of process.

78. There is and was no legitimate, non-pretextual, procompetitive business justification for the unlawful agreement between Smartvent, Risk Reduction, and Sunvent that outweighs its anticompetitive effects.

79. Further, there is and was no legitimate, non-pretextual, procompetitive business justification for abusing the judicial process to force competitors to either leave the marketplace or cease to exist entirely.

80. Crawl Space and consumers of flood vents and flood insurance have been and will continue to be directly harmed by the acts of Smartvent, Risk Reduction, and Sunvent.

## COUNT III

## VIOLATION OF 15 U.S.C. § 2

81. Crawl Space hereby realleges and incorporates by reference the allegations of preceding paragraphs as if fully set forth herein.

82. Smartvent has monopolized and/or attempted to monopolize the flood vent marketplace by and through its actions.

83. Smartvent has combined and conspired with Risk Reduction and Sunvent to monopolize the flood vent marketplace, and committed over acts in furtherance of their unlawful conspiracy.

84. Smartvent has used predatory and anticompetitive conduct to achieve the above goals and in doing so has removed all but one flood vent competitor from the marketplace, making it dangerously probable that Smartvent will, if it has not already, achieved monopoly power.

85. Crawl Space and consumers of flood vents and flood insurance have been and will continue to be directly harmed by the acts of Smartvent, Risk Reduction, and Sunvent.

## PRAYER FOR RELIEF

WHERFORE, Crawl Space Doors prays for judgment against Defendants and for the following relief:

A. A declaration that the conduct alleged herein is in violation of Sections 1 and 2 of the Sherman Act;

B. Permanent injunctive relief (i) enjoining Defendants from continuing their illegal conduct; (ii) enjoining Defendants from engaging in future anticompetitive conduct with the purpose or effect of harming Crawl Space Doors in the marketplace; and (iii) requiring Defendants to take affirmative steps to dissipate the continuing effects of their prior unlawful conduct;

C. An award of Plaintiffs' damages, in an amount to be determined at trial, trebled;

D. An award of Plaintiffs' costs of suit, including reasonable attorneys' fees as provided by law; and

E. Such other and further relief as the Court deems just and proper.

JURY TRIAL DEMANDED

**CRAWL SPACE DOORS, INC.**


 /s/ Duncan G. Byers
Of Counsel
Duncan G. Byers, Esq.
Va. Bar No. 48146
PATTEN, WORNOM, HATTEN &
DIAMONSTEIN
12350 Jefferson Avenue, Suite 300
Newport News, VA  23602
Telephone:     (757) 223-4500
Facsimile:      (757) 249-1627
dbyers@pwhd.com
*Counsel for the Plaintiff, Crawl Space Doors*