**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**CRAWL SPACE DOOR SYSTEM, INC.,**

    **Plaintiff,**

v.                                                             **CIVIL ACTION NO. 2:19-cv-320**

**SMARTVENT PRODUCTS, INC. and
RISK REDUCTION PLUS GROUP, INC.,**

    **Defendants.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 30–31. Having reviewed the parties' filings in this case, the Court finds that this matter is ripe for judicial determination. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

    **I.    FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Crawl Space Door System, Inc. ("Crawl Space") and Defendant Smart Vent Products, Inc. ("Smart Vent") are corporations that specialize in flood vents, a device installed in crawl spaces to allow flood water to pass through foundation and other building walls, relieving water pressure against a structure to avoid structural damage during floods. ECF No. 28-2 at ¶ 10. Flood vents are sold throughout the United States, but specifically in areas identified as flood zones by the Federal Emergency Management Agency ("FEMA") and the National Flood Insurance Program ("NFIP"). *Id.* at ¶ 21. The marketplace for flood vents includes flood vents that meet both FEMA and NFIP guidelines, or "engineered" flood vents. *Id.* at ¶¶ 11–12, 14, 18–19. At one point in time, there were at least seven different domestic companies that sold flood vents of varying

1

designs and costs, and that were FEMA and NFIP compliant.[1] *Id.* at ¶ 13. However, to date, there are only three companies that sell flood vents in the market: Crawl Space, Smart Vent, and Flood Flaps.[2] *Id.* at ¶ 19.

Smart Vent controls 90-95% of the flood vent marketplace. *Id.* at ¶ 68. Over the last eight years, Smart Vent's gross sales have increased dramatically from $3.6 million in 2012 to approximately $10 million in 2018. *Id.* at ¶ 25. Smart Vent has also created and uses Risk Reduction Plus Group ("Risk Reduction"), a private flood insurance company that shares the same physical location as Smart Vent, to advise customers to not only purchase Risk Reduction's flood insurance but also to exclusively purchase Smart Vent's products. *Id.* at ¶¶ 26, 73–76.

Beginning in September 2013, Smart Vent filed a lawsuit against Crawl Space alleging, among other things, that Crawl Space falsely claimed that its flood vents were FEMA and NFIP complaint. *Id.* at ¶¶48–49. During the litigation, the court found Crawl Space's flood vents FEMA and NFIP compliant and dismissed these claims with prejudice. *Id.* at ¶50. The matter was tried in October 2019, and a jury found Smart Vent liable in damages for making false statements regarding the coverage area and compliance of Crawl Space's flood vents. *Id.* at ¶¶51–52.

On July 18, 2019, while the prior lawsuit was still pending, Crawl Space initiated suit against Smart Vent and Risk Reduction ("Defendants") alleging antitrust violations under § 1 and § 2 of the Sherman Act. ECF No. 1. Smart Vent and Risk Reduction moved to dismiss, and after the matter was fully briefed, the Court held a hearing on the matter. ECF Nos. 18–23; *see also* ECF No. 24. Following the hearing, Crawl Space filed an Amended Complaint on February 4, 2020. *See* ECF Nos. 28–29.

---

[1] These companies, in addition to Crawl Space and Smart Vent, included USA Floodair Vents, LTD.; Vinylast, Inc.; AAA Louvers, Inc.; and Ted Shook, d/b/a American Floodvent. ECF No. 28-2 at 8–9.
[2] Flood Flaps is a company located in South Carolina and sells directly through Crawl Space in addition to selling through building supply companies. ECF No. 28-2 at ¶ 19.

In its Amended Complaint, Crawl Space alleges that through the use of illegal anti-competitive tactics, Smart Vent drove all but two engineered flood vent competitors out of the marketplace and is now targeting Crawl Space.[3] ECF No. 28-2 at ¶¶ 15–17, 24–30. Crawl Space claims that Smart Vent, despite knowing the truth, falsely informed consumers, the general public, surveyors, architects, code officials, and state licensing agencies that competitors' flood vents were illegal and/or not FEMA or NFIP compliant, and that competitors' engineers have acted improperly and/or illegally in certifying flood vents. *Id.* at ¶¶ 26, 54–55. Crawl Space claims that Smart Vent provided this false information on the internet, during its training of surveyors in the industry, and by creating, printing, and disseminating at least 10,000 copies of a document that deliberately targeted and mischaracterized Crawl Space's flood vents as "non-engineered." *Id.* at ¶¶ 54–67. Crawl Space also alleges that Smart Vent worked together with Risk Reduction to advise customers seeking flood insurance that the products of competitors are "illegal" and/or not FEMA compliant "so as to coerce customers to not only purchase insurance through Risk Reduction but to exclusively purchase Smart Vent products." *Id.* at ¶¶ 26; 77–79. As a result of its anti-competitive actions, Crawl Space was forced to avoid bringing new flood vent designs to the market. *Id.* at ¶ 72.

Defendants moved to dismiss Crawl Space's Amended Complaint on March 2, 2020. ECF Nos. 30–31. Crawl Space opposed the motion on March 16, 2020. ECF No. 33. Defendants filed a reply on April 20, 2020.[4] ECF No. 35.

---

[3] According to the Complaint, Smart Vent brought the following lawsuits against other domestic flood vent competitors: *Smart Vent v. USA Floodair Vents, Ltd*, No. 1:10-cv-00168 (D.N.J. 2010); *Smart Vent v. Vinylast, Inc.*, 1:11-cv-07071 (D.N.J. 2011); *Smart Vent v. AAA Louvers, Inc.* 1:13-cv-03643 (D.N.J. 2013); *Smart Vent v. Ted Shook, d/b/a American Floodvent*, 1:17-cv-01579 (D.N.J. 2017).

[4] Defendants' reply was due on March 23, 2020. Defendants however filed their response on April 20, 2020. ECF No. 35. Given the current pandemic and the court closures, the Court waives the initial reply deadline, and considers Defendants' reply as filed on April 20, 2020.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. The United States Supreme Court has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Assessing a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678.

In the context of antitrust cases, "[a] plaintiff must plead sufficient facts so that each element of the alleged antitrust violation can be identified." *Dickson v. Microsoft Corp.,* 309 F.3d 193, 202 (4th Cir. 2002) (citations omitted). The allegations must be stated in terms that are neither vague nor conclusory." *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 220 (4th Cir. 1994); *see Iqbal*, 556 U.S. at 678 (noting "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although a court at the motion to dismiss stage is bound to accept all of the factual allegations in the complaint as true, it is not proper for a court to "assume that the [plaintiff] can prove facts that it has not alleged or that defendants have violated the antitrust laws in ways that have not been alleged.'" *Estate Constr.,* 14 F.3d at 221 (quoting *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)). Dismissals for failure to state an antitrust claim should be granted sparingly and only if it appears that plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. *Reynolds Metals Co. v. Columbia Gas Sys., Inc.*, 669 F.Supp. 744, 750

4

(E.D.Va.1987) (citing *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746 (1976)). In considering a Rule 12(b)(6) motion to dismiss, the Court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment. Fed. R. Civ. P. 12(d). Nonetheless, the Court may still "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also* Fed. R. Civ. P. 10(c).

### III. DISCUSSION

#### a. Section 1 of the Sherman Act

Crawl Space alleges that Smart Vent and Risk Reduction violated § 1 of the Sherman Act by entering into "an agreement to divide the marketplace and remove all competition to Smart Vent in the flood vent marketplace." ECF No. 28-2 at ¶ 88–98. Section 1 of the Sherman Act prohibits "[e]very contract, combination ..., or conspiracy in restraint of trade." 15 U.S.C. § 1. "To establish a § 1 antitrust violation, a plaintiff must prove: (1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015) (citing *N.C. State Bd. of Dental Exam'rs v. FTC*, 717 F.3d 359, 371 (4th Cir. 2013)). Section 1 of the Sherman Act's prohibition against unreasonable restraints of trade "applies only to concerted action…which requires evidence of a relationship between at least two legally distinct persons or entities." *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 284 (4th Cir. 2012) (citations omitted). It does not reach conduct that is "wholly unilateral." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (citation omitted).

The United States Supreme Court held that under § 1, a parent corporation and its wholly-owned subsidiary are incapable of conspiring with each other. *Id.* at 779 (holding that officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy). The Court reasoned that although a parent corporation and its wholly owned subsidiary are "separate" for purposes of incorporation or formal title, they are controlled by a single decision-maker and control a single aggregation of economic power. *Id.* Joint conduct by these two entities does not "deprive[] the marketplace of independent centers of decision making" as they have a "complete unity of interest." *Id.* Yet, it is "not dispositive if defendants organize themselves 'under a single umbrella or into a structured joint venture.'" *Robertson*, 679 F.3d at 284 (citation omitted). The relevant functional inquiry is whether there is a conspiracy between "separate economic actors pursing separate economic interests," such that the agreement deprives the marketplace of "independent centers of decision-making." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 196 (2010). "Substance, not form" determines whether entities are capable of conspiring under § 1. *Id.* at 195 (*citing Copperweld*, 467 U.S. at 773, n. 21).

Defendants argue that given the nature of their corporate relationship and the case law, Smart Vent and Risk Reduction are incapable of conspiring together as they are owned by the same officers and share the same physical location. ECF No. 31 at 18–21. Crawl Space contends that at this stage in the litigation, they have little to no information about the internal structures and control of either or both Defendants. ECF No. 33 at 20–21.

The Court is unpersuaded by Crawl Space's assertion that they have little to no information about the internal structures and control of either Smart Vent and Risk Reduction. First, Crawl Space previously represented to this Court in its initial Complaint that Risk Reduction is a wholly owned subsidiary of Smart Vent and is operated in conjunction with Smart Vent. ECF No. 1 at ¶¶

56, 58. Crawl Space also represented to the Court that Smart Vent and Risk Reduction not only share the same physical location but also share the same CEO, President, Vice President, and Secretary. *Id.* at ¶¶ 56–57. While Crawl Space now contends that they realized after review that they did not have enough information to support the original assertion made in its initial Complaint, during the Motion to Dismiss hearing in January 2020, counsel for Defendants represented to the Court that Risk Reduction is a wholly owned subsidiary of Smart Vent, and that they share all the same officers. *See* Hearing Transcript ("Hr'g Tr.") 10:18–11:23. This information is not only in the Court's record but also public record, and Crawl Space had more than enough time to verify this information.

Yet, to avoid dismissal after learning that a parent and its wholly owned subsidiary are incapable of conspiring under § 1 of the Sherman Act, Crawl Space amended its Complaint to indicate that they are unaware of the ownership and control of Defendants, failing to realize that this runs counter to other allegations included in the same Complaint. For example, elsewhere in the Amended Complaint, Crawl Space stated that Smart Vent "created and used" Risk Reduction for tying products and maintained that both companies share the same location. *See* ECF No. 26. Exhibits attached to Crawl Space's Complaint, which the Court finds are authentic, further indicate that Risk Reduction is wholly owned by Smart Vent. Ex. A at 460:22– 461:20. Thus, despite Crawl Space's contentions of having little to no information regarding the internal structures and control of Defendants, this Court certainly has enough information at this stage in the litigation to make a determination regarding Crawl Space's § 1 claim. The Court will not turn its head to the facts that have become a part of the Court's record, and therefore, accepts as true that Risk Reduction is a wholly owned subsidiary of Smart Vent.[5]

---

[5] Given the Court's record in this matter, the Court cannot reasonably infer otherwise, or accept as true, that Crawl Space has little to no information regarding the internal structures and control of Defendants.

Smart Vent and Risk Reduction are therefore incapable of conspiring with each other for purposes of § 1. While it is "not dispositive if defendants organize themselves 'under a single umbrella or into a structured joint venture,'" *Robertson*, 679 F.3d at 284 (citation omitted), the Court finds that Smart Vent and Risk Reduction are not "separate economic actors pursing separate economic interests," such that the agreement deprives the marketplace of "independent centers of decision-making." *See Am. Needle, Inc.*, 560 U.S. at 196; *Copperweld*, 467 U.S. 768. Both entities share the same officers and physical location, are controlled by a single center of decision-making, and share a complete unity of interest. *Id.* The substance of both companies demonstrate that they are incapable of concerted action. [6] *See id.* Because the premise of § 1 requires concerted action, and because a parent and its wholly owned subsidiary are incapable of conspiring together, Crawl Space failed to plead facts sufficient to withstand a § 1 claim.[7]

### b. Section 2 of the Sherman Act

Crawl Space's remaining claim is that Smart Vent monopolized and/or attempted to monopolize the flood vent marketplace" in violation of § 2 of the Sherman Act. ECF No. 28-2 ¶ 100. Section 2 of the Sherman Act prohibits monopolization or attempted monopolization. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 454 (1993). To state a claim for monopolization, plaintiffs must allege "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power – as opposed to simply superior products or

---

[6] Crawl Space argues that even if both entities do have the exact same ownership and officers, as a matter of law, "the officers of Smart Vent and Risk Reduction who are not licensed insurance agents cannot exert control over the sale of insurance that is controlled by state and federal regulation." ECF No. 33 at 24–26. The Court finds this argument lacks merit.

[7] Regarding Crawl Space's § 1 claim, Defendants argued that Crawl Space failed to state a claim for an unlawful tying arrangement because the Complaint offers no facts to establish the requisite power in the tying market. ECF No. 31; *see also* ECF No. 35 at 10–11. Crawl Space did not address this argument. See ECF No. 33. This claim under § 1 is therefore abandoned. *See Burns & Russell Co. of Baltimore v. Oldcastle, Inc.*, 166 F. Supp. 2d 434, 440 (D. Md. 2001) (noting that plaintiffs conceded the point by failing to respond to an argument).

historic accidents." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 480 (1992)); *Cavalier Tel., LLC v. Verizon Va., Inc.*, 330 F.3d 176, 183 (4th Cir. 2003). To state a claim for attempted monopolization, plaintiffs must allege "(1) that the defendant engaged in predatory or anticompetitive conduct (2) with a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports*, 506 U.S. at 456; *Advanced Health–Care Servs., Inc. v. Radford Cmty. Hosp.*, 910 F.2d 139, 147 (4th Cir.1990). To prevail on either claim, plaintiff "must present evidence of conduct on [a] defendant's part that is unreasonably exclusionary or predatory." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d 443, 456 (E.D. Va. 2009) (citation omitted). In analyzing any § 2 claim, courts begin with a preliminary inquiry into market definition. *Kolon Indus.*, 637 F.3d at 441 (citation omitted).

   i. *Market Definition*

  Although market definition is not in dispute, in analyzing any § 2 claim the Court proceeds with a preliminary inquiry into whether the Complaint sufficiently pleads market definition. *See Kolon Indus.*, 637 F.3d at 441 (citation omitted). The market definition is a question of fact which consists of two components – the relevant product market and the relevant geographic market. *Id.* at 439; *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962). The relevant product market concerns "commodities reasonably interchangeable by consumers for the same purposes." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956). The relevant geographic market, on the other hand, "focuses on the geographic area within which the defendant's customers who are affected by the challenged practice can practicably turn to alternative supplies if the defendant were to raise its prices or restrict its output." *Kolon Indus.*, 637 F.3d at 441 (citation

9

omitted). A plaintiff must allege both the relevant product and the relevant geographic market to satisfy market definition. *Id.*

Here, Crawl Space has identified both the relevant product and the relevant geographic market. The relevant product market is the market for flood vents, which includes engineered flood vents. *See* ECF No. 28-2 at ¶¶ 18–22. The geographic market is the United States, and specifically those areas where individuals need flood vents or areas prone to flooding. *Id.* at ¶¶ 21–22. Thus, Crawl Space has sufficiently pleaded a relevant market under § 2.

    ii.   *Exclusionary Conduct*

While the relevant market definition is not in dispute, the parties do dispute whether Crawl Space sufficiently pleaded exclusionary conduct. ECF No. 31 at 7–10. As stated previously, to prevail on any § 2 claim, a plaintiff "must present evidence of conduct on [a] defendant's part that is unreasonably exclusionary or predatory." *E.I. DuPont de Nemours & Co.*, 688 F. Supp. 2d at 456. A company violates § 2 "when it acquires or maintains, or attempts to acquire or maintain, a monopoly by engaging in exclusionary conduct 'as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *United States v. Grinnell*, 384 U.S. 563, 571 (1966). To be condemned as exclusionary, "a monopolist's act must have an 'anticompetitive effect.' That is, it must harm the competitive process and thereby harm consumers." *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001). Courts have found unreasonably exclusionary practices in cases where a defendant who has monopoly power obtained a fraudulently procured patent, *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177 (1965), initiated sham litigation, *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993), utilized tying agreements that further entrench the defendant's market dominance, *see Eastman Kodak Co. v. Image Techn. Servs., Inc.*,

504 U.S. 451 (1992), entered exclusive dealing agreements that foreclosed competitors from a substantial portion of the market, *Kolon Industries Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 175 (4th Cir. 2014), and engaged in business disparagement that lead to market injury, *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 992 (5th Cir. 1983). In many cases, exclusionary acts that have no apparent rational business purpose other than eliminating competition in the market and seizing or maintaining monopoly power, will be identified as exclusionary. *Image Techn. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997).

Crawl Space alleges that Defendants engaged in exclusionary conduct when Smart Vent and Risk Reduction informed consumers, the general public, and third parties that Crawl Space's flood vents were illegal to use. *See* ECF No. 28-2 at ¶¶ 45–72. In other words, Crawl Space alleges commercial disparagement. Several courts have held that commercial disparagement is presumed to have a *de minimis* effect on competition which does not violate § 2 unless plaintiff overcomes this presumption. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1127 (10th Cir. 2014) (citing *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 916 (2d Cir. 1988)); *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. Of Podiatric Surgery, Inc.*, 323 F.3d 366, 371 (6th Cir. 2003). To rebut this presumption, plaintiff must show that the disparagement was: (1) clearly false; (2) clearly material; (3) clearly likely to induce reasonable reliance; (4) made to buyers without knowledge of the subject matter; (5) continued for prolonged periods; and (6) not readily susceptible to neutralization or other offset by rivals." *See Lenox MacLaren Surgical Corp.*, 762 F.3d at 1127; *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'n, Inc.*, 108 F.3d 1147, 1152 (9th Cir.1997).

Defendants argue that Crawl Space has not rebutted the *de minimis* effect that commercial disparagement has on competition and has otherwise failed to allege exclusionary conduct. ECF

No. 31 at 10–18. Specifically, Defendants argue that Crawl Space failed to show that the disparagement was clearly false, made to buyers without knowledge of the subject matter, and was readily susceptible to neutralization. ECF No. 31 at 12–18.

The Court finds that Crawl Space sufficiently pleaded facts to rebut the presumption that commercial disparagement has a *de minimis* effect on competition. First, Crawl Space does allege that the commercial disparagement was clearly false as demonstrated by the court order issued in the previous lawsuit between Smart Vent and Crawl Space. ECF No. 28-2 at ¶ 50. Crawl Space also alleged that despite knowing that Crawl Space's flood vents are FEMA and NFIP compliant, Smart Vent continues to disparage its business. *Id.* at ¶ 52. At the motion to dismiss stage, this is sufficient to indicate that the disparagement was clearly false.

Second, Crawl Space sufficiently pleaded facts to suggest that the disparagement was material as it concerned Crawl Space's ability to sell flood vents and compete in the flood vent market. *Id.* at ¶ 72. Third, Crawl Space also sufficiently pleaded that the disparagement was likely to induce reasonable reliance as the disparagement was made in part to consumers. *Id.* at ¶¶ 26, 54–55. The Court can reasonably infer that consumers relied on the disparagement because it was disseminated by a company who owns 90-95% of the flood vent marketplace and distributed in multiple forms over the internet and on paper. *Id.* at ¶ 68, 72.

Fourth, the Complaint sufficiently alleges that the disparagement was made to buyers without knowledge of the subject matter. Though Smart Vent supplied the information in part to surveyors during training, and otherwise to individuals who would have knowledge about flood vents, Smart Vent also made the disparaging comments to the general public, which the Court can reasonably infer includes those without knowledge of flood vents. *Id.* at ¶¶ 53–67.

Fifth, the disparagement continued for prolonged periods. According to the Complaint, the disparagement occurred since at least September 2013, when Smart Vent initiated its suit against Crawl Space in federal court claiming that Crawl Space's flood vents were illegal. *Id.* at ¶¶ 48–49. Smart Vent continues to make these disparaging remarks even after the court in that case found Crawl Space's flood vents FEMA and NFIP compliant. *See id.* at ¶¶ 50, 53–66.

Finally, the disparagement was not readily susceptible to neutralization or other offset, as indicated in part by the fact that although Crawl Space was able to get the claims dismissed in federal court, Smart Vent and Risk Reduction continue to disparage Crawl Space's flood vents. *Id.* at ¶¶ 53–66. Additionally, Smart Vent disparaged Crawl Space while training its surveyors and others in the industry. *Id.* As Crawl Space points out, to neutralize this misinformation, Crawl Space would have to know each person and group that Defendants trained. *Se*e ECF No. 33 at 18–19. This would be unduly burdensome to Crawl Space who neither does any training in the industry nor holds itself out as "the source of industry 'expertise' that Defendants hold themselves out to be." *Id.* at 18. The Court therefore finds that the disparagement in this case was not readily susceptible to neutralization or other offset.

Having met all six factors, the Court finds that Crawl Space has sufficiently pleaded facts to rebut the *de minimis* effect that commercial disparagement has on competition. Therefore, Crawl Space has sufficiently pleaded exclusionary conduct. [8] Though not in dispute, the Court now turns to whether Crawl Space alleged enough facts to sustain its monopolization and attempted monopolization claims.

---

[8] Because the Court finds that Crawl Space alleged enough facts to show exclusionary conduct through business disparagement, the Court refrains from analyzing whether Plaintiff identified other claims of exclusionary conduct. *See* ECF No. 33 at 12–15 (noting other conduct identified in the Complaint that do not fall under commercial disparagement).

13

### i. Monopolization

As stated above, a monopolization claim requires a plaintiff to show: (1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power – as opposed to simply superior products or historic accidents." *Kolon Indus.*, 637 F.3d at 450 (citation omitted). Monopoly power is the power to control prices or exclude competition." *E.I. du Pont de Nemours & Co.*, 351 U.S. at 391. For element one, courts have found a possession of monopoly power when a defendant is "truly predominant in the market," or dominates no less than seventy percent of the relevant market. *White Bag Co. v. Int'l Paper Co.*, 579 F.2d 1384, 1387 (4th Cir. 1974) (noting also that in attempted monopolization cases a share of fifty percent or greater is often required); s*ee Kolon Indus.*, 637 F.3d at 450. To prove the second element, willful maintenance of monopoly power, a plaintiff must plead enough facts showing that defendant engaged in conduct that "foreclose[s] competition, to gain a competitive advantage, or to destroy a competitor." *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 175 (4th Cir. 2014) (citing *Eastman Kodak Co.*, 504 U.S. at 451).

The Court finds that Crawl Space pleaded enough facts to meet the elements of a monopolization claim. First, the Court accepts as true that Smart Vent owns 90 – 95% of the flood vent marketplace. ECF No. 28-2 at ¶ 68. Smart Vent also has the sales to back it up, increasing in sales from $3.6 million in 2012 to $10 million in 2018. *Id.* at ¶ 25. Thus, Smart Vent is "truly dominant" in the flood vent marketplace. *Id.* at ¶¶ 18–19; *see White Bag Co.*, 579 F.2d at 1387. Crawl Space also alleged enough facts showing that Defendants maintained their monopoly power using exclusionary practices such as business disparagement which harmed both competition and consumers. *Id.* at ¶ 25–31. Thus, Crawl Space sufficiently pleaded a § 2 monopoly claim.

      *ii.  Attempted Monopolization*

To sufficiently plead an attempted monopolization claim, a plaintiff must allege: "(1) the use of anticompetitive conduct; (2) with specific intent to monopolize; and (3) a dangerous probability of success." *Spectrum Sports, Inc.*, 506 U.S. at 456; *Advanced Health–Care Servs., Inc.*, 910 F.2d at 147.  The use of anticompetitive conduct can be shown by pleading sufficient facts showing that the defendant engaged in exclusionary conduct. As to the second element, specific intent to monopolize may be inferred from extreme predatory or exclusionary conduct. *Human Res. Inst. of Norfolk, Inc. v. Blue Cross of Virginia*, 498 F. Supp. 63, 67 (E.D. Va. 1980). (citing *United States v. Jerrold Electronics Corp.*, 187 F.Supp. 545 (E.D. Pa. 1960), aff'd 365 U.S. 567 (1961)); *Greenville Publishing Co. v. Daily Reflector, Inc.*, 496 F.2d 391 (4th Cir. 1974). Finally, for the third element, a dangerous probability of monopolization, "courts have found it necessary to consider the relevant market and the defendant's ability to lessen or destroy competition in that market." *Spectrum Sports*, 506 U.S. at 456. Because this Court finds that Crawl Space sufficiently pleaded monopolization and exclusionary conduct, this Court reaches the conclusion that Crawl Space adequately pleaded that Smart Vent used anticompetitive conduct, had a specific intent to monopolize, and has a dangerous probability of success. Therefore, Crawl Space's attempted monopolization claim withstands 12(b)(6) dismissal. *See Kolon Indus.*, 637 F.3d at 453; *see also Advanced Health–Care Servs.*, 910 F.2d at 139 (noting that an allegation of dominant market share coupled with exclusionary conduct is sufficient to withstand a motion to dismiss monopolization and attempted monopolization claims).

## IV. CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.** Defendants' Motion to Dismiss Plaintiff's claim of a violation of § 1 of the Sherman Act is **GRANTED**. Defendants' Motion to Dismiss Plaintiff's claim of a violation of § 2 of the Sherman Act is **DENIED**.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia  
April 28, 2020                                        United States District Judge